IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-02135-WYD-MJW

MARINO BERNARD SCOTT,

Plaintiff,

v.

NORMA M. HILDE, (SIS Tech/Office) and
TIMOTHY M. POLAND, (Mailroom Officer),

Defendants.

---

**RECOMMENDATION ON
(1) PLAINTIFF'S ORDER TO CAUSE FOR A-INJUNCTION-A TEMPORARY
RESTRAINING ORDER (Docket No. 21)
and
(2) PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION/TRO
(Docket No. 26)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by Chief Judge Wiley Y. Daniel on November 16, 2010. (Docket No. 11).

The pro se plaintiff, who is in the custody of the United States Bureau of Prisons ("BOP") and is currently incarcerated at the United States Penitentiary in Florence, Colorado, brings this civil rights action pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1977). The operative pleading is the Amended Prisoner Complaint (Docket No. 8). However, based upon an Order to Dismiss in Part and to Draw Case to a District Judge and to a

2

Magistrate Judge issued by Judge Christine M. Arguello on November 12, 2010 (Docket No. 9), defendant Charles A. Daniels was dismissed as a party to this action due to the plaintiff's failure to allege his personal participation.  Therefore, only two defendants remain, Norma M. Hilde and Timothy M. Poland.

As noted by Judge Arguello, plaintiff asserts three claims in this action.  In his first and second claims, he asserts claims for "theft of private property . . . theft of federal mail, grand larceny, interfering with access to commerce, conspiracy, harassment and constitutional violations."  (Docket No. 8 at 5, 10).  He alleges that defendants Poland and Hilde have intercepted and interfered with his constitutionally-protected legal mail.  (Docket No. 8 at 5, 10).  Judge Arguello construed these claims as asserting violations of plaintiff's First Amendment right to access the courts and right to send and receive legal mail.  (Docket No. 9 at 2).  In his third claim, plaintiff asserts that he has been subject to "harassment [and] First, Fifth and Eight[h] Amendment constitutional violations."  (Docket No. 8 at 15).  He alleges that after he attempted to access the courts by sending out mail through another inmate, he received an incident report and was placed in administrative segregation, where he was held for approximately 190 days with no further explanation.  (Docket No. 8 at 15).  He further asserts that he was exposed to hepatitis B and other diseases in administrative segregation and that he did not receive necessary medical attention.  (Docket No. 8 at 15).

Now before the court for a report and recommendation is the plaintiff's "ORDER TO CAUSE FOR A -INJUNCTION-A TEMPORARY RESTRAINING ORDER" (Docket No. 21) and "Motion for Preliminary Injunction/TRO" (Docket No. 26).  Defendants filed

3

a Response (Docket No. 48), and plaintiff has filed "support" to his pending motions (Docket No. 51).  The court has considered these motion papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions of law, and recommendation that the motions be denied.

Plaintiff is proceeding *pro se.*  The court, therefore, reviews his pleadings and other papers liberally and holds them to a less stringent standard than those drafted by attorneys.  Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir. 2007).  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers).  However, a *pro se* litigant's conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).  See Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

Plaintiff's "ORDER TO CAUSE FOR A -INJUNCTION-A TEMPORARY RESTRAINING ORDER" (Docket No. 21) consists of a proposed order for the court to

4

issue (Docket No. 21 at 1) and an Affidavit by plaintiff in support thereof (Docket No. 21 at 2-4) in which plaintiff alleges the following. On November 29, 2010, he took an unsealed envelope to Captain Hutchings at USP Florence to be inspected and mailed, but Hutchings refused to have anything to do with it. Plaintiff then took the "un-opened envelope" to the USP Florence mail room and advised the mail room staff/officer (A. Watson) what Hutchings said, that he has a complaint against defendants Hilde and Poland in the United States District Court, and that he wanted Watson to inspect it, weigh it for postage, and seal it with tape. Watson spoke with defendant Poland who was also in the mail room, and Poland authorized Watson to inspect and seal plaintiff's mail. Watson thus thoroughly inspected plaintiff's mail, weighed it, and sealed it with tape. Watson stated it would be mailed out the following day.

Two hours later, however, plaintiff was told to report to the lieutenant's office. Once plaintiff was at the lieutenant's office door, plaintiff was called into the hallway by defendant Hilde, and plaintiff noticed that Hilde had plaintiff's mail that he had delivered to the mail room earlier that day. Plaintiff signed a confiscation form and then spoke with Agent Brown regarding the form. Plaintiff received a threat from a SIS Tech, whose name plaintiff does not know, stating that if plaintiff does not stop filing administrative remedies, he would be placed back in the Special Housing Unit, and criminal charges would be filed against him. The theft of plaintiff's mail has not stopped.

In the tendered "ORDER TO CAUSE FOR A -INJUNCTION-A TEMPORARY RESTRAINING ORDER" (Docket No. 21), plaintiff seeks a preliminary injunction pursuant to Fed. R. Civ. P. 65 "enjoining the defendants, their successors in office, agents and employees and all other persons acting in concert and participation with

them, from Harassing, Mail Theft, Ridiculing, Oppressing, Injuring or Punishing Plaintiff for submission or attempting to submit civil action," and restraining them "from Stealing Plaintiff's mail or parts of the contents thereof, Opening outgoing and incoming LEGAL/SPECIAL correspondence, Harassment and Creating obstacles to prevent Plaintiff from exercising his remedies by due course of law." (Docket No. 21 at 1).

Plaintiff alleges the following in his Motion for Preliminary Injunction/TRO (Docket No. 26), which includes his Declaration and Memorandum of Law in support thereof. He was placed in segregation for 190 days for attempting to file a complaint on February 3, 2010. He has received eight Incident Reports from February 3 to December 7, 2010, written by defendant Hilde. In fact, five were written in one day on December 7, 2010. "Plaintiff is suffering irreparable harm in the form of theft of his mail, threats and retaliation." Plaintiff recounts the November 29, 2010, mail incident described in his "ORDER TO CAUSE FOR A -INJUNCTION-A TEMPORARY RESTRAINING ORDER" (Docket No. 21). Plaintiff asserts that he "is entitled to a temporary restraining order requiring the defendants to stop the theft of Plaintiff's mail, threats and retaliation." (Docket No. 26 at 2, ¶ 8).

In his Amended Prisoner Complaint, plaintiff seeks the same TRO and injunctive relief sought in the two motions before the court, as well as monetary damages.

Injunctive relief is an extraordinary remedy that should be granted only when the moving party clearly and unequivocally demonstrates its necessity. See Schrier v. University of Colo., 427 F.3d 1253, 1258 (10th Cir. 2005). In the Tenth Circuit, the party requesting a temporary restraining order ("TRO") or a preliminary injunction ("PI") must establish that: (1) the party will suffer irreparable injury unless the injunction issues; (2)

6

the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood of success on the merits. See Id.; Brode v. Chase Home Finance, LLC, 2010 WL 1258066, *2 (D. Colo. Mar. 25, 2010). Furthermore, this court also considers "well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. . . .  Courts should grant injunctive relief involving the management of prisons . . . only under exceptional and compelling circumstances." Walker v. Meyer, 2009 WL 1965493, *4 (D. Colo. July 8, 2009) (citations omitted).

Here, this court finds that the plaintiff has not established that he is entitled to a PI or TRO. This court finds that the plaintiff has not established a substantial likelihood of success on the merits. "In the First Amendment context . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'" Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)). "Prisoners have a basic First Amendment right to communicate by mail with persons outside the prison. . . .  That right includes the right to have incoming and outgoing mail processed unless a legitimate penological interest warrants otherwise, and it prohibits prison officials from restricting mail simply to harass inmates or confiscating mail that complies with prison property." Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *13 (D. Colo. Mar. 10, 2011) (internal quotations and citations omitted). Restrictions on outgoing inmate mail are justified if reasonably related to legitimate penological interests. Thornburgh v. Abbott, 490 U.S. 401, 413-14

(1989). To adequately plead a claim that prison officials violated an inmate's First Amendment rights with regard to mishandling of mail, the inmate must allege facts showing that (I) his mail was mishandled; (ii) that the particular named Defendant was responsible for that mishandling, (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest." Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *13 (D. Colo. Mar. 10, 2011).

In this case, the affidavit submitted by defendant Hilde (Docket No. 48-1) with defendants' Response provides details and attaches documentation which show that through the prison disciplinary system, the plaintiff has been found to have used the mail and written correspondence to threaten another person, to attempt extortion, to use others to violate prison policy by having another inmate send mail in his name when it was plaintiff's mail, and to send out instructions to his wife on how to misrepresent herself as an attorney to circumvent how plaintiff's mail is reviewed. Hilde details the disciplinary charges and resultant outcomes of the particular Incident Reports mentioned by plaintiff in the two motions before the court. According to Hilde, "[a]s has been shown . . ., Plaintiff has a history of attempting to file fraudulent tax and lien documents, through the mail, against government officials. As a result of Plaintiff's extensive history, his outgoing and incoming general correspondence is currently being monitored closely by SIS staff. General correspondence deemed a security risk is rejected/confiscated and, when it contains evidence of criminal activity, referred to appropriate law enforcement agencies for further investigation." (Docket No. 48-1 at 10, ¶ 34). Plaintiff has not shown that any or all of these disciplinary charges have been

8

reversed on appeal or by a court.

Based upon the documentation provided to the court, this court finds that there is a plausible inference to be drawn that the base s for the handling of plaintiff's mail, his disciplinary charges, and his placement in segregation were reasonably related to a legitimate penological interest. Such documentation does not support the conclusion that plaintiff's mail was "stolen" or that he was disciplined for the act of filing grievances or initiating lawsuits. Rather, they indicate that he was disciplined because he had been found in violation of certain BOP rules concerning mail privileges. "Censorship of personal correspondence that include threats, blackmail, contraband, plots to escape, discuss criminal activities, or otherwise circumvent prison regulations, is essential to the protection of prison order and security." Gandy v. Ortiz, 122 Fed. Appx. 421, 423 (10th Cir. Feb. 10, 2005) (unpublished). See United States v. Workman, 80 F.3d 688, 699 (2d Cir. 1996) ("The investigation and prevention of ongoing illegal inmate activity constitute legitimate penological objectives.").

Furthermore, with respect to plaintiff's claim about access to the courts, he has failed to allege, let alone demonstrate, any actual injury. "[A] prisoner must demonstrate actual injury from interference with his access to the courts–that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010).

In addition to these considerations, plaintiff has not met his heavy burden to show that the injunction is not adverse to the public interest, that public interest here being deference to prison officials' proper administration of prison facilities. See Moles

9

v. Lappin, 2010 WL 796756, at *6 (W.D. Okla. Feb. 26, 2010).

Based on the findings above, the court need not analyze the two additional elements that must be established to obtain a preliminary injunction. Caught Fish Enterprises, LLC v. Action Mfg., LLC, 2010 WL 2508397, *2 (D. Colo. June 17, 2010).

With regard to plaintiff's request for injunctive relief regarding future retaliation, the possibility of retaliation is simply too speculative to justify granting plaintiff's request for a preliminary injunction. "[A] plaintiff satisfies the irreparable harm requirement by demonstrating 'a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages. . . . **Purely speculative harm will not suffice** . . . ." RoDa Drilling Co v. Siegal, 552 F.3d 1203, 1210 (10th Cir. 2009) (emphasis added). See Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003) (agreeing with the proposition that "purely speculative harm does not amount to irreparable injury" and holding "that a plaintiff who can show a significant risk of irreparable harm has demonstrated that the harm is not speculative"); Maximus, Inc. v. Thompson, 78 F.Supp.2d 1182, 1189 (D. Kan. 1999) ("Speculation or unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction."). See also Sims v. New, 2008 WL 5044554, *2 (D. Colo. Sept. 2, 2008) (inmate's speculation that he *may* suffer acts of retaliation, including placement in segregation or a transfer, without more does not establish irreparable harm for purposes of imposing injunctive relief).

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that the plaintiff's "ORDER TO CAUSE FOR A -INJUNCTION-

10

A TEMPORARY RESTRAINING ORDER" (Docket No. 21) and "Motion for Preliminary Injunction/TRO" (Docket No. 26) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date: June 20, 2011   s/ Michael J. Watanabe
      Denver, Colorado   Michael J. Watanabe
                         United States Magistrate Judge