IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   10-cv-02135-WYD-MJW

MARINO BERNARD SCOTT,

Plaintiff,

v.

NORMA M. HILDE, (SIS Tech/Office) and
TIMOTHY M. POLAND, (Mailroom Officer),

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 45)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Chief Judge Wiley Y. Daniel on November 16, 2010.  (Docket No. 11).

The pro se plaintiff, who is in the custody of the United States Bureau of Prisons

("BOP") and is currently incarcerated at the United States Penitentiary ("USP") in

Florence, Colorado, brings this civil rights action pursuant to 28 U.S.C. § 1331 and

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388

(1977).  The operative pleading is the Amended Prisoner Complaint (Docket No. 8).

However, based upon an Order to Dismiss in Part and to Draw Case to a District Judge

and to a Magistrate Judge issued by Judge Christine M. Arguello on November 12,

2010 (Docket No. 9), defendant Charles A. Daniels was dismissed as a party to this

action due to the plaintiff's failure to allege Daniels' personal participation.  Therefore,

only two defendants remain, Norma M. Hilde and Timothy M. Poland.  Plaintiff asserts

the following three claims in his Amended Prisoner Complaint (Docket No. 8).

Claim One:  Theft of private property and theft of Federal mail.  On October 23,

2009, certified mail, which was legal correspondence, was delivered for the plaintiff to

the USP, mail room staff signed for it, but the plaintiff did not receive it, nor did he

receive a rejection notice.  When on November 12, 2009, plaintiff discovered this legal

correspondence was sent to him, defendant mail room officer T. Poland showed plaintiff

the mail and stated he was sending it to defendant SIS Tech N. Hilde.  On November

15, 2009, plaintiff spoke with Hilde, who stated that the property had been returned to

the sender, but the sender never received it, and plaintiff never received a rejection

notice.  On March 12, 2010, another certified letter was delivered to USP Florence for

plaintiff, but once again, plaintiff never received it or a rejection notice.  Based upon

these incidents, USP staff committed a criminal act of theft of property and theft of

Federal mail and have violated his First Amendment right to receive legal

correspondence.

Claim Two: Theft of Federal Mail, Grand Larceny, Interfering with access to

commerce, conspiracy, harassment and contitutional violations.  On November 11,

2009, Hilde informed plaintiff that she was holding a registered legal envelope

addressed to the Secretary of the U.S. Treasury.  She stated "she has the

correspondence and will be having it's [sic] content investigated."  (Docket No. 8 at 3).

Plaintiff was never given a notice indicating that this envelope was confiscated.  On

January 24, 2010, plaintiff gave a large legal envelope addressed to Magistrate Judge

Watanabe to Unit Officer R. Taylor to be mailed by certified mail.  The postage was

affixed to the envelope.  Plaintiff did not receive his certified mail receipt and thus spoke

with mail room offer Nuci on January 28, 2010.  Nuci stated that there was no record of

the item listed and that plaintiff should check back later.  When plaintiff did so,

defendant Poland advised that he gave it to defendant Hilde a few days before.  When

plaintiff spoke to Hilde, she stated that she sent it to the USP Florence Legal

Department to be investigated for fraud and that if that department determined plaintiff

was not committing a fraud with the documents enclosed, they would be mailed.

Judge Arguello construed Claims One and Two as asserting violations of

plaintiff's First Amendment right to access the courts and right to send and receive legal

mail.  (Docket No. 9 at 2).

Claim Three.  Harassment, First, Fifth and Eight Amendment Constitutional

Violations.  On February 2, 2010, plaintiff attempted to file a complaint with this court

with another inmate's name on the front of the envelope after several attempts by using

plaintiff's own name.  This envelope with the other inmate's name was opened outside

of that inmate's presence.  The following day, plaintiff was escorted from his job to a

holding cell.  He was searched, and his property was taken.  About four hours later, he

was served an Incident Report for Unauthorized Use of Mail, and four hours later, he

was escorted to Administrative Detention without a lockup order.  On February 17,

2010, he was given a hearing, and the Unit Counselor recommended loss of phone for

15 days and no detention time.  The other member of the U.D.C. Hearing agreed with

that recommendation, but plaintiff remained in Administrative Detention.  Plaintiff wrote

to Warden C. Daniels and informed him that Hilde had his property from February 3,

2010, and had not returned it and that plaintiff had not received anything in writing

stating why he was being held in Special Housing (Detention).  Plaintiff remained in

Administrative Detention for 190 days without any written explanation.  While he was

housed in Administrative Detention, he was exposed to Hepatitis C and MRSA daily due

to inmates flooding the unit with water, urine, and other body waste.  Plaintiff was not

provided with cleaning products to sanitize after multiple complaints to SHU staff.

On April 10, 2010, plaintiff needed medical attention.  He fell unconscious after trying to

get help.  The emergency duress button did not work, and, in fact, none of the duress

buttons in SHU were operating.  On January 26, 2010, plaintiff's weight was 227.5

pounds, but after his release into general population, he was 191 pounds.  He lost 36.5

pounds during the 190 days he was held in detention.

Plaintiff seeks a temporary restraining order,[1] an injunction, and monetary

damages.

Now before the court for a report and recommendation is the Defendants' Motion

to Dismiss (Docket No. 45).  Defendants seek dismissal of the Amended Prisoner

Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6) on the following grounds:

(1) plaintiff fails to state a claim under the First Amendment, (2) plaintiff fails to state a

claim in Claim Three, and (3) defendants are entitled to qualified immunity.   Plaintiff has

not filed a response to this motion.  The court has considered the motion as well as the

court's file and applicable Federal Rules of Civil Procedure and case law.  The court

now being fully informed makes the following findings, conclusions of law, and

---

[1]In a Report and Recommendation issued by this court on June 20, 2011 (Docket No. 60), it was recommended that the plaintiff's "ORDER TO CAUSE FOR A-INJUNCTION-A TEMPORARY RESTRAINING ORDER" (Docket No. 21) and "Motion for Preliminary Injunction/TRO" (Docket No. 26) be denied.

recommendation that the motion be granted.

Rule 12(b)(1):

> empowers a court to dismiss a Complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear.  *See* U.S. CONST. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994).  Statutes conferring jurisdiction on federal courts are to be strictly construed.  *See F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964).  A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction."  *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

> Motions to dismiss pursuant to Rule 12(b)(1) may take two forms.  First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true.  *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact.  *See id.* at 1003.  A court's consideration of evidence outside the pleadings will not convert the motion to dismiss to a motion for summary judgment under Rule 56.  *See id.*

Cherry Creek Card & Party Shop, Inc. v. Hallmark Marketing Corp., 176 F. Supp.2d 1091, 1094-95 (D. Colo. 2001).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does

not plead 'enough facts to state a claim to relief that is plausible on its face.'" Cutter v.

RailAmerica, Inc., 2008 WL 163016, at *2 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do . . . ." Bell Atlantic Corp., 550 U.S. at 555 (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level." Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)

(quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

Plaintiff is proceeding *pro se.*  The court, therefore, reviews plaintiff's pleadings

and other papers liberally and holds them to a less stringent standard than those drafted

by attorneys. Trackwell v. United States Government, 472 F.3d 1242, 1243 (10th Cir.

2007). See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro

se* complaint to less stringent standards than formal pleadings drafted by lawyers).

However, a *pro se* litigant's conclusory allegations without supporting factual averments

are insufficient to state a claim upon which relief can be based. Hall v. Bellmon, 935

F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove

facts that have not been alleged or that a defendant has violated laws in ways that a plaintiff has not alleged.  See Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983); Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

Defendants first assert that the plaintiff has failed to state a claim under the First Amendment.  They assert that plaintiff presumably brings his claims against them under the First Amendment's right of access to the courts, but plaintiff has not alleged any injury that has hindered his efforts to pursue a legal claim.  Defendants note that in support of his claim, plaintiff asserts only that three incoming and two outgoing letters (one of which had admittedly had a fraudulent name for the return address) were not delivered by the defendants due to ongoing mail monitoring and investigations.  Plaintiff, however, has not alleged that either defendant prevented him from filing a lawsuit or pursuing other legal claims in this or any other matter.  Defendants contend that in fact, plaintiff filed this lawsuit subsequent to the alleged seizure of his correspondence, thereby showing that he was not denied access to the courts.  With regard to a free speech claim, defendants note that plaintiff alleges that he sent two pieces of outgoing legal correspondence that were confiscated by defendant and never delivered and that one piece of outgoing non-legal correspondence to the Secretary of the Treasury was never delivered nor rejected.  Plaintiff, however, fails to allege that he has suffered any

8

prejudice or injury, and he has failed to show that his mail was not delivered, that defendants were responsible for such non-delivery, and that defendants acted intentionally or with deliberate indifference.  Furthermore, plaintiff fails to allege that the two pieces of legal correspondence were sent to his attorney or to the court, and, in fact, he fails to allege to whom the correspondence was sent.  Defendants note that all outgoing mail that did not qualify as special/legal mail was properly subject to inspection and that certified mail does not, in and of itself, qualify for special/legal mail handling procedures.  (Citing 28 C.F.R. § 540.18).  According to defendants, plaintiff has set forth no facts to show that these regulations are not reasonable.  While plaintiff claims that the certified mail tracer forms show that the mail was never processed, "[t]he information contained in the tracer forms shows only that the mail could not be located, not that it was never submitted to the Postal Service for delivery."  See Treff v. Galetka, 74 F.3d 191, 196 (10th Cir. 1996).  Defendants assert that because plaintiff has failed to allege any injury or to address defendants' motive or state of mind that they engaged in a pattern or practice of opening plaintiff's legal mail outside of his presence, his claim premised on the First Amendment fails to state a claim upon which relief may be granted.

Regarding incoming mail, defendants note that plaintiff alleges that he was sent one incoming legal correspondence (although he does not identify the sender) that was never delivered and was allegedly confiscated by defendants.  In addition, he claims that two pieces of incoming non-legal mail were never delivered to him nor rejected by Bureau staff.  Defendants assert that once again, however, plaintiff fails to allege he has suffered any prejudice or injury as a result of the legal mail violation and he fails to

9

show that defendants were responsible for any alleged non-delivery and that they acted intentionally or with deliberate indifference.  To the extent plaintiff alleges a constitutional violation because prison officials opened his personal, unprivileged mail outside his presence, defendants assert plaintiff has failed to state a constitutional claim because this type of mail clearly falls within the regulations governing general mail, and the failure to open such mail in the inmate's presence does not give rise to a constitutional violation.

"In the First Amendment context . . . some rights are simply inconsistent with the status of a prisoner or 'with the legitimate penological objectives of the corrections system.'"  Shaw v. Murphy, 532 U.S. 223, 229 (2001) (quoting Pell v. Procunier, 417 U.S. 817, 822 (1974)).  "Prisoners have a basic First Amendment right to communicate by mail with persons outside the prison. . . .  That right includes the right to have incoming and outgoing mail processed unless a legitimate penological interest warrants otherwise, and it prohibits prison officials from restricting mail simply to harass inmates or confiscating mail that complies with prison property."  Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *13 (D. Colo. Mar. 10, 2011) (internal quotations and citations omitted).  To adequately plead a claim that prison officials violated an inmate's First Amendment rights with regard to mishandling of mail, the inmate must allege facts showing that (I) his mail was mishandled; (ii) that the particular named Defendant was responsible for that mishandling, (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest."  Ajaj v. Federal Bureau of Prisons, 2011 WL 902440, at *13 (D. Colo. Mar. 10, 2011).  Here, in Claims One and

10

Two, plaintiff complains about four specific instances of interference with his mail.

In Claim One, plaintiff claims that he did not receive a certified letter delivered to the facility on March 12, 2010.  Plaintiff, however, makes no averments concerning either defendant with respect to this piece of mail.

Also in Claim One, plaintiff complains about a piece of certified mail, which purportedly was legal correspondence from an unidentified sender, which according to defendant Hilde was returned to the sender, who according to plaintiff did not receive it. In Claim Two, plaintiff alleges that in November 2009 Hilde informed him that she was having the contents of a piece of plaintiff's mail addressed to the Secretary of the U.S. Treasury investigated.  Finally, in Claim Two, plaintiff alleges that in January 2010, he gave officer Taylor an envelope addressed to this court, but defendant Poland subsequently advised plaintiff that he gave it to defendant Hilde, who stated that she sent it to the USP Florence Legal Department to be investigated for fraud and that if that department determined plaintiff was not committing a fraud with the documents enclosed, they would be mailed.  With respect to these three pieces of mail, the court finds that the plaintiff has not averred that they were mishandled, or even if any or all of them were mishandled, that the mishandling was purposeful, nor has he shown that there is a plausible inference to be drawn that the basis for such mishandling was not reasonably related to a legitimate penological interest.  Therefore, plaintiff has not stated a claim of constitutional magnitude with respect to these three incidents.

With regard to any denial of access to the courts claim, defendants correctly assert that plaintiff has not alleged any injury that has hindered his efforts to pursue a legal claim.  "[A] prisoner must demonstrate actual injury from interference with his

11

access to the courts–that is, that the prisoner was frustrated or impeded in his efforts to

pursue a nonfrivolous legal claim concerning his conviction or his conditions of

confinement." Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010).

With regard to Claim Three, defendants correctly assert that the plaintiff has

failed to state any specific wrongdoing by either of the defendants.  "Individual liability

under § 1983 must be based on personal involvement in the alleged constitutional

violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).  "Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the

Constitution." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009).   Because plaintiff has

failed to allege the personal involvement of the defendants in any of the actions

complained of in Claim Three, Claim Three should be also dismissed.

**WHEREFORE,** for the foregoing reasons it is hereby

**RECOMMENDED** that Defendants' Motion to Dismiss (Docket No. 45)  be

granted.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

12

recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53

(1985), and also waives appellate review of both factual and legal questions.

<u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley</u>

<u>v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date: September 2, 2011                    s/ Michael J. Watanabe
       Denver, Colorado                    Michael J. Watanabe
                                           United States Magistrate Judge